IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President | § § § § § § | |
| v. | § § | 5:17-CV-1072-DAE |
| RON NIRENBERG, in his Official Capacity as Mayor of the City of San Antonio, and ROBERT TREVINO, WILIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, and JOHN COURAGE, in their official capacities as Members of the San Antonio City Council, and the CITY OF SAN ANTONIO | § § § § § § § § § § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE DAVID A. EZRA:

Now come RON NIRENBERG, in his Official Capacity as Mayor of the City of San Antonio, and ROBERT TREVINO, WILIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, and JOHN COURAGE, in their official capacities as Members of the San Antonio City Council, and the CITY OF SAN ANTONIO, Defendants, and make this Response to Plaintiffs' motion for preliminary injunction [**Doc.16**], and would show the following:

## Introduction

1. This case is about a confederate monument that used to stand in Travis Park in San Antonio, Texas. **Doc.4**. The City removed the monument from Travis Park during the summer of 2017. Plaintiffs contend they own the monument and want to recover just compensation for its loss. **Doc.4, paraVI.1**.

2. Plaintiffs filed suit in October 2017. Shortly thereafter, they filed their First Amended Complaint [**Doc.4**], which they were free to do as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). Plaintiffs served the First Amended Complaint on Defendants on December 1, 2017. Note that before serving Defendants, Plaintiffs filed other amended pleadings, but those papers were not served on Defendants in compliance with the rules and, in any event, are not properly before the Court. *See* Fed. R. Civ. P. 15(a)(2). Defendants filed a motion to dismiss, which remains pending. **Docs.7, 15**. Defendants have not answered, and no answer is due at this time. *See* Fed. R. Civ. P. 12(a)(4).

3. On the afternoon of the last day before the winter holidays, the Plaintiffs filed a motion for preliminary injunction concerning what they contend is a "time capsule"[1] in the base of the confederate statue that the City removed from Travis Park. They argue that because the ordinance authorizing removal of the statue did not explicitly authorize removal of the time capsule, the City cannot continue to maintain possession of the time capsule. **Doc.16**.

4. Plaintiffs seek a preliminary injunction restraining the City from "retaining any remaining contents of the time capsule . . . in violation of the plaintiffs[sic] First, Fifth, and

---

[1] Defendants will use the term as a matter of convenience, but deny that anything resembling the Plaintiffs' description of a time capsule was located in the monument when it was removed.

Fourteenth Amendment rights" and an award of "all damages for lost or damaged items contained within the time capsule." **Doc.16, p.5**.

## Preliminary Injunction Standard

5.     The purpose of a preliminary injunction is to preserve the status quo by preventing irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *Mississippi Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 627 (5th Cir. 1985); *Nichols v. Alcatel USA, Inc*., 532 F.3d 364, 372 (5th Cir. 2008). "The purpose of an injunction is to prevent *future violations*." *United States v. W. T. Grant Co*., 345 U.S. 629, 633 (1953) (emphasis added). Preliminary injunctions – like the one sought here – that would change, rather than maintain, the status quo, are generally disfavored and should not issue unless the facts and law clearly favor the moving party. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

6.     A preliminary injunction is a "drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citation omitted) (emphasis in original); *PCI Transportation, Inc. v. Fort Worth & Western Railroad Company*, 418 F.3d 535, 546 (5th Cir. 2005) ("The plaintiff has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction."). As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light*, 760 F.2d at 621; *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir.1996).

7.     To obtain a preliminary injunction, it is well established that a movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the

threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction will not disserve the public interest. *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015); *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *Mississippi Power & Light*, 760 F.2d at 621 (*citing Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). A preliminary injunction must be denied where the movant has failed sufficiently to establish *any one* of these four criteria. *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990) (emphasis in original). Only if a movant demonstrates a likelihood of success on the merits must the Court analyze the threat of irreparable harm or weigh the relative hardships. *See State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).

## Analysis

7.      The Plaintiffs' motion for preliminary injunction should be denied. The motion seeks to reverse the status quo rather than maintain it. Plaintiffs fail to meet their burden to show that any of the applicable criteria warrant the extraordinary relief they seek.

### *What is the likelihood the movants will ultimately prevail on the merits?*

8.      Success on the merits is the predominant criterion. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005). Plaintiffs will not likely succeed on the merits in this Court because their claims are not ripe.

9.      Plaintiffs claim the City interfered with their property in violation of their federal constitutional rights. They specifically allege deprivation of real and personal property without just compensation and without procedural due process.

10.     Deprivation of property does not constitute a due process violation if the state provides a meaningful post-deprivation remedy. *Williamson County Regional Planning Comm. v. Hamilton*

*Bank*, 473 U.S. 172, 194-195 (1985); *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). Relevant and adequate remedies under Texas law include takings under the Texas Constitution, inverse condemnation, conversion, and trespass to try title. *Cathey v. Guenther*, 47 F.3d 162, 164 (5th Cir. 1995); *see Hamilton*, 472 U.S. 172 (Inverse condemnation); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (Conversion); *Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.—San Antonio, 1978, no writ) (same); *Myers v. Adams*, 728 S.W.2d 771, 772 (Tex. 1987); *Revell v. Port Authority of New York*, 598 F.3d 128, 139 (3d Cir. 2010) (Claim unripe because plaintiff failed to file a state tort lawsuit for conversion or a writ of replevin before seeking remedies in federal court for deprivation of property without due process.); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004) ("The statute expressly provides that [trespass to try title] is 'the method for determining title to ... real property,'" quoting Tex. Prop. Code §22.001(a)).

11.  It is of no consequence here, where the Plaintiffs allege the City physically took their property, that the Plaintiffs' due process and takings claims arise from deliberate government action rather than a random and unauthorized act of an official. *See Archibold-Garrett v. New Orleans City Metro/Durr Grp.*, 2017 WL 3158146 *4 (E.D.La. July 25, 2017). A federal takings/just compensation claim is unripe until a plaintiff has sought and been denied compensation through the forum state's procedures. *Rolf v. City of San Antonio*, 77 F.3d 823, 826 (5th Cir. 1996). Only where state procedures are inadequate – i.e., where the process afforded by the state "almost certainly will not compensate the claimant" – will a court recognize a ripe federal claim. *Id*., citing *Samaad v. City of Dallas*, 940 F.2d 925 (5th Cir. 1991).

12.  For the same reason, Plaintiffs' procedural due process claim is unripe. Ripeness depends on two factors: "(1) the fitness of the issues for judicial decision and (2) the hardship to the

parties of withholding court consideration." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011). Ripeness determinations follow the general rule that a claim is unripe if further factual development is necessary. *See John Corp. v. City of Houston*, 214 F.3d 573, 586 (5th Cir. 2000). Where there has been a physical taking, a procedural due process claim is unripe absent exhaustion of state court procedures; the Fifth Circuit explained, if "the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, we cannot know whether the plaintiff has suffered any injury until the takings claim has been adjudicated." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011); *see Villa Montechino, L.P. v. City of Lago Vista*, 2017 WL 2198172 *3-4 (W.D.Tex. May 18, 2017).

13.  Plaintiffs contend they are entitled to a preliminary injunction delivering to them immediate possession of property they contend is a time capsule because the ordinance directing the monument's removal did not explicitly authorize removal of a time capsule. That argument could – without stretching – accommodate a contention that the ordinance [*see* **Doc.16-1**] authorized only removal of the monument (i.e., the base) and not the statue on top of it because the ordinance does not explicitly identify the statue. But that's absurd. The ordinance was clearly intended to direct the removal of the entire installation. Moreover, after much discussion about leveling, the evidence offered by the Plaintiffs establishes that the items comprising the time capsule were "deposited . . . *in the corner stone.*" **Doc.16-2, p.8**. It is implausible to interpret an ordinance providing for the removal of a monument as reflecting an intent to exclude items that were part – or located inside – of the same monument.

14.  Accordingly, the Plaintiffs' contention that the ordinance did not specifically provide for removal of a time capsule is inconsequential. Nonetheless, Plaintiffs contend that whomever

ASJ v. CoSA, 5:17-CV-1072-DAE
CoSA Resp. to Pls' Motion for Prelim. Injunction
Page 6

removed the time capsule did so without authority. Thus, ironically, if the Court were to buck Fifth Circuit precedent and adopt the random deprivation theory[2] Plaintiffs have advanced in other filings, then the specific relief sought in their motion for preliminary injunction is unavailable until the Plaintiffs exhaust state-law remedies.

15. Though not especially relevant to their motion for preliminary injunction, Plaintiffs have little chance of success on their claim to ownership of the monument even *under state law*. The City owns the monument. The City, exclusively, maintained it for over a century. Plaintiffs never made any assertion to the City of an ownership interest in the monument during the first 44 years they now claim to have owned it. They never presented the City any indicia of title. Plaintiffs never took any action to maintain the monument, clean it, or keep up the grounds around it. They never offered to defray the City's costs in doing so. Plaintiffs made no effort in the century following erection of the statue to ensure the integrity of the time capsule. Plaintiffs' predecessor in alleged ownership never did any of these things either.[3] Accordingly, the Plaintiffs will not likely prevail on their claim that they own the property.

16. In this Court, Plaintiffs are pursuing a federal action to recover just compensation for property and property damage, or to recover the property. Plaintiffs' federal action is unripe and must be dismissed. Accordingly, they have no chance of prevailing on the merits of their claims in this Court, at this time. The Court lacks a jurisdictional basis to hear Plaintiffs' state law

---

[2] i.e., that exhaustion of state remedies is necessary to ripen federal claims only if the deprivation results from random, unauthorized acts of public officials. *See* **Doc.8, p.7**.

[3] The City intends in the near future to move for leave to supplement this response with evidence supporting the assertions made herein. However, due to the fact – well-publicized – that the City's offices closed less than 2 hours after the Plaintiffs filed their motion for preliminary injunction and would not reopen until January 2, 2018, [see http://www.sanantonio.gov/Commpa/holidaysandclosures], the evidence was not gathered before this response became due. LR CV-7(e)(2).

conversion or takings claim. Accordingly, the Plaintiffs are unlikely to succeed on the merits in this cause and their motion for preliminary injunction should be denied.

### *Will granting the injunction disserve the public interest?*

17. Under the issues raised by Plaintiffs' motion for preliminary injunction, the public interest criteria is a close second in importance to the likelihood of success on the merits. The public interest clearly favors the City's continued retention of the monument, its components and contents. The City is a public entity. Plaintiffs are a private entity and private persons. The property remains in the public's possession as long as the City continues to hold it. If the Court delivers custody or possession to the Plaintiffs, the property will be held privately, which is contrary to the public interest in the matter before the Court. Transferring possession to private hands in reliance on the Plaintiffs' ownership evidence – folklore, inference, and other hearsay – should be especially troubling from the public interest perspective. See para. 15, *supra*.

### *What is the threat Plaintiffs will suffer irreparable injury?*

18. There is no substantial threat of irreparable injury should the City retain the time capsule. The City has exercised dominion and control over the monument (which incorporated the void that Plaintiffs contend is a time capsule) for more than a century. Plaintiffs do not suggest how continued retention by the City at this time would be detrimental to the property. Indeed, the City has covered, wrapped, and/or crated the components of the monument and placed them in a dry place secure against the elements and the threat of tampering and vandalism, as it advised this Court during a hearing in a related matter in August 2017.

19. Plaintiffs do not suggest that irreparable damage hadn't already been inflicted by the elements long before the monument was removed from Travis Park. The description of the void suggests it had and that the damage was complete. But more importantly, there is no threat that

its current storage condition will do further, permanent damage. Plaintiffs speculate that the dry conditions of storage might cause further deterioration, but they offer not a scintilla of evidentiary support. Moreover, to the extent Plaintiffs speculate that *dryness* might hurt whatever might be left in the pedestal, they do not offer evidence that the storage conditions would do anything that hasn't already been done by the long spells of dry Texas heat that the monument has endured since 1899. Further, Plaintiffs wholly ignore the likelihood that damage would have progressed unabated had the monument remained exposed to the elements *in situ*.

20.     Plaintiffs' burden is greater here because they seek to upend the status quo rather than maintain it. *See Martinez*, 544 F.2d at 1243. But Plaintiffs have failed to establish that disturbing the status quo (i.e., the monument's current storage conditions) would prevent future harm, the presence and imminence of which exist as matters of pure speculation.

> ***Does the threatened injury to Plaintiffs outweigh whatever damage the proposed injunction may cause the City?***

21.     The balance of the hardships is ordinarily the least important of the criteria, and this matter is no different. Nonetheless, this criteria also favors denial of Plaintiffs' motion for preliminary injunction. As set forth above, the Plaintiffs (and their alleged predecessors) and the City are in the same posture vis-à-vis possession of the monument or any of its components or contents that they have been in since 1899. The monument is in possession of the City. The City is responsible for storage. The monument is safely in storage. The City would incur substantial expense should the Court require it to transfer possession to the Plaintiffs; note that the cost of removing the monument exceeded the initial, sizeable monetary allocation. *See* **Doc.16-2, p.3**.

### Security

22.     Plaintiffs' motion for preliminary injunction should be denied because it fails to pledge security. Fed. R. Civ. P. 65(c).

### Regarding Conference

23.     Plaintiffs did not confer regarding the relief sought in their motion.[4] *See* LR CV-7(i). Plaintiffs' motion might be considered dispositive, so it's fairly debatable whether the local rule mandated conference, and the City's opposition reasonably could be presumed. However, Plaintiffs wholly failed to respond to a prompt request to accommodate the undersigned's winter holiday plans, which did not include time in the office drafting this paper.

### Prayer

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs' motion for preliminary injunction be denied.

---

[4]     Counsel for Plaintiffs called the undersigned on December 11, 2017, and discussed the existence of the time capsule, *vel non*. The undersigned advised – verbally on December 11 and in a follow-up email on December 18 – that a City employee familiar with the removal and storage of the monument advised that nothing had been located that might have been a time capsule other than a void in the base of the statue, and no wooden box or other items were identifiable in the void, which was described as appearing to have been penetrated by water, long ago.

Respectfully submitted,

_____
Shawn Fitzpatrick
SBN 00787474
FITZPATRICK & KOSANOVICH, P.C.
PO Box 831121
San Antonio, Texas  78283-1121
(210) 408-6793
skf@fitzkoslaw.com

## CERTIFICATE OF SERVICE

I certify service of a true and correct copy of this instrument on the following person on December 29, 2017, through the Court's electronic filing and notification system:

Thomas J. Crane

_____
Shawn Fitzpatrick

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President<br><br>v.<br><br>RON NIRENBERG, in his Official Capacity as Mayor of the City of San Antonio, and ROBERT TREVINO, WILIAM SHAW, REBECCA VIAGRAN, REY SALDANA, SHIRLEY GONZALES, GREG BROCKHOUSE, ANA SANDOVAL, MANNY PALAEZ, and JOHN COURAGE, in their official capacities as Members of the San Antonio City Council, and the CITY OF SAN ANTONIO | §§§§§§§§§§§§§§§§§§§ | 5:17-CV-1072-DAE |

**Order Denying Plaintiffs' Motion for Preliminary Injunction**

Came on to be heard Plaintiffs' motion for preliminary injunction [**Doc.16**] and Defendants' response to same [**Doc.18**], and the Court finds the Plaintiffs have failed to carry their burden and denies their motion.

It is, therefore, ORDERED, that Plaintiffs' motion for preliminary injunction [**Doc.16**] is hereby DENIED.

Signed on this the ___ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE