UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President | § § § § | CIVIL ACTION NO. SA-17-CV-1072-DAE |
| v. | § | |
| THE CITY OF SAN ANTONIO | § | |

## PLAINTIFFS' CORRECTED SECOND MOTION FOR PRELIMINARY INJUNCTION RE TIME CAPSULE

Plaintiff, Albert Sidney Johnston Chapter No. 2060, submits this, its Corrected Second Motion for Preliminary Injunction Regarding the Time Capsule pursuant to Fed.R.Civ.Pro. Rule 65, and shows as follows:

**Procedural Background**

1. Plaintiffs filed their Original Complaint on Oct. 23, 2017. Plaintiffs amended the Complaint on Oct. 25. On Nov. 20, 2017, Plaintiffs asked to submit their Third Amended Complaint. The Court granted that request on June 5, 2018 (Dkt #42). Plaintiff submitted its first Motion for Preliminary Injunction (Dkt #16) on Dec. 22, 2017. The Court denied that first motion for preliminary injunction on Jan. 23, 2018 (Dkt #23).

2. On Nov. 16, 2017, the Defendant submitted its first Motion to Dismiss. Among other claims, the City advanced a technical claim that Plaintiffs failed to serve the Summons paper along with a copy of Plaintiffs' Original Complaint. The Defendant did not deny being aware of the lawsuit or having receiving the Complaint. It stood on technical grounds to argue the Plaintiff did not comply with federal civil procedure, as it had the right to do. Later, when Plaintiff did serve the summons papers along with Plaintiffs' complaint, the City withdrew that argument as a basis for dismissal.

3. Plaintiffs previously submitted a motion for preliminary injunction which sought a return of the time capsule (Dkt #16). The Plaintiffs were concerned about the likely harm to the contents. Old paper and textiles when suddenly exposed to modern

temperatures and humidity will suffer damage. The Defendant opposed the motion arguing 1) that the ordinance which authorized removal of the Travis Park monument necessarily included the time capsule, 2) the City owns the monument, not the ASJ chapter, therefore, it owns the time capsule, 3) the monument is well protected in its current storage facility, and 4) that there is no time capsule. See Def's Response (Dkt #18), p. 6, 7, 8, 10 n.4. The City said then that no time capsule had been recovered. ". . . . [N]othing had been located which might have been a time capsule other than a void in the base of the statue. . ." Def's Response, p. 10 n.4. The Defendant referred to some property which Plaintiffs "contend" is a time capsule. Def's Response, p. 6. The Defendant asserted the time capsule simply did not exist. In one footnote, the City said it would "use the term [time capsule] as a matter of convenience, but deny that anything resembling the Plaintiffs' description of a time capsule was located in the monument when it was removed." Def's Response, p. 2 n.1.

4. Yet, the photos produced by Defendant on April 12, 2018 include the picture attached as Exhibit A. In the background of the picture is a box marked "3." In the lower left hand corner of that box are the upside down words, "Time Capsule." The second page to Exhibit A is a second picture. That second picture is a "screen shot" taken of an enlarged photo of box no. 3. That screen shot displays the upside down words, "Time Capsule" more clearly. And, when the Plaintiffs inspected the Travis Park monument on June 6, 2018, they clearly saw the time capsule in that very location of the warehouse.

5. The Court denied Plaintiffs' first Motion for Preliminary Injunction on Jan, 23, 2018 (Dkt #23). The Court erroneously found the Plaintiffs had advanced a claim based on the First Amendment. Dkt #23, p. 6-7. The Plaintiffs *at that time* did not have a live pleading which advanced a claim based on free speech or the First Amendment. Regarding the Plaintiff's Fifth Amendment claim and the taking of the time capsule, the Court noted that the Plaintiffs had failed to establish that irreparable harm was likely to occur if the motion were not granted. The Court noted that the Plaintiffs had only shown the possibility of permanent damage to the contents of the time capsule, not a "significant" risk of harm. Dkt #23, p. 13. In that prior motion, the Plaintiffs had provided testimony from Robin Terrazas and Rita Schimpff stating that the contents would suffer

harm. But, at the time, the Plaintiffs had not yet seen the time capsule themselves, and had not yet verified its actual location. And, at the time, Plaintiffs had not yet consulted with an expert in preserving old records.

      6. On June 5, 2018, the Court denied Defendant's second motion to dismiss. But, as of the date of this motion, the City still has not submitted an Answer to this lawsuit.

## Factual Background

      1. Early in the lawsuit, the Plaintiffs asked the Defendant if they could inspect the Travis Park monument. The Defendant rejected Plaintiffs' request, insisting, as it has the right to insist, that Plaintiffs follow normal civil procedure. Plaintiffs submitted a Request for Entry Upon Land for Inspection of the Monument and Time Capsule on Feb. 28, 2018. The Defendant imposed numerous conditions, to which the Plaintiffs eventually agreed. The Plaintiffs inspected the Travis Park monument and time capsule on June 6, 2018.

      2. On June 5, 2018, the day before the inspection, Defendant's counsel informed below named counsel that the Plaintiffs may need tools when they inspect the monument. The Defendant informed Plaintiff's counsel that the monument was currently stored in "crates" and that the Plaintiffs may open the crates, but must close them upon completion. Since one of the conditions of the inspection was a time limitation, this caused some concern for the Plaintiffs. A larger concern was what sort of tools would be needed. Were the crates nailed together? Would Plaintiffs need to bring hammer and nails? Defendant could not indicate which tools would be needed.

      3. When Plaintiffs arrived at the location of the monument, it was found the "crates" were actually wooden boxes. The Confederate soldier was completely enclosed in a box. Unless the box could be opened, the statue could not be viewed or inspected. Plaintiffs had brought a certified memorialist to inspect the monument. The trip would have been wasted if the box could not be opened.

      4. Plaintiffs did bring one hammer and some screw drivers. But, the box was fastened with an obscure "star" shaped screw. It would be necessary to use a star shaped screw driver tip to remove the star shaped screws. None of the plaintiffs brought a selection of screw driver tips. Fortunately, one of the Plaintiffs was able to find a Home Depot nearby, and purchase the necessary star shaped screw driver tips. The Plaintiffs

3

were then able to complete the inspection only some ten minutes over the 1.5 hour limitation. The Defendant graciously did not enforce the 1,5 hour time limitation strictly. Three female plaintiffs, one male lawyer (the undersigned), one male photographer and one male certified memorialist were able to open and then close back up some half dozen wooden boxes each with some 1, 2 or 3 dozen star shaped screws on each box in 93 degree heat.

 5. According to contemporary news accounts, the time capsule included: am Old Testament used by a Confederate soldier during the war, a prayer book, a paper by Harry Hertzberg, various coins and bills, rosters of various organizations, a Confederate flag, pressed flowers, and photographs. Ex. D, R. Schimpff Affid., p. 1-2. This was very likely the same Harry Hertzberg who would later become a state senator representing San Antonio and achieve some fame for his circus collection.

## Discussion

### 1. Plaintiffs have satisfied the requirements for a preliminary injunction regarding the time capsule.

 In seeking a preliminary injunction, a plaintiff must show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tip in his favor, and that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 US 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). The time capsule belongs to the ASJ chapter No. 2060. It was placed by the Barnard E. Bee chapter in 1899. The Barnard E. Bee chapter transferred its interests to the ASJ chapter in 1972. See Ex. B, R. Terrazas 12/21/2017 Affid., p. 1.

 The Takings Clause of the Fifth Amendment, which is made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V; *see also Urban Developers LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006). "[T]o prevail on a takings claim, a plaintiff first must demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). To determine if a protectable property interest exists, courts must "resort to existing rules or understandings that stem

4

from an independent source such as state law[.]" *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, at 577); *see also Dennis Melancon, Inc.*, 703 F.3d at 269 (noting that this requirement applies to claims brought under the Fifth and Fourteenth Amendments).

The City was authorized to remove the Travis Park monument. The City's ordinance authorizing this removal made no mention of the time capsule. See Exhibit C, Ordinance No. 17-4900. The City has denied the existence of the time capsule. Yet, the City has retained the time capsule for no apparent reason. It has taken no steps to protect the historical artifacts within the time capsule. When the plaintiffs arrived on June 6 to inspect the monument, the corner stone in which the time capsule sits was uncovered. Yet, many of the other blocks and pallets were covered by plastic. The time capsule is currently exposed to UV light, to air and to pests. Ex. D, R. Schimpff Affid., p. 3; Ex. F, R. Terrazas 6/18/2018 Affid., p.1.

The heat and humidity which San Antonio has experienced since the beginning of May, 2018 would adversely affect paper, wood, and metal objects, as well as textiles and photographs. Ex. E, R. Mauldin Affid., p. 1. According to contemporary news accounts, the time capsule includes paper, photographs and textiles. Ex. D, R. Schimpff Affid., p. 1-2. The time capsule includes a Bible used by a Confederate soldier during the war. Ex. D, R. Schimpff Affid., p. 2. High humidity and warm temperatures can cause mold to grow on the paper items. Ex. E, R. Mauldin Affid., p. 1. High temperatures will cause old paper to age at an increased rate. The paper will become brittle. It will discolor. The high temperature will cause textiles and photographs to fade. Ex. E, R. Mauldin Affid., p. 1-2. Some insects feed on the ink and glue in old paper products. Because the hole above the time capsule is open, it will allow entry by pests and rodents. Ex. E, R. Mauldin Affid., p. 2. Deterioration is "certain" if the objects in the time capsule remain in their present environment. Ex. E, R. Mauldin Affid., p. 2. Rachel Mauldin has been working in museums and museum related non-profit organizations for some 30 years. In her opinion, the objects within the time capsule will suffer damage if nothing is done.

The City has taken no steps to preserve what will likely be found to belong to the ASJ chapter. When Ms. Terrazas arrived to inspect the monument on June 6, the corner stone with the time capsule was completely open. Ex. F, R. Terrazas 6/18/2018 Affid., p.

5

In Plaintiff Terrazas' email dated Sept. 5, 2017, she specifically addressed the time capsule. She told the city that the time capsule "rightfully" belongs to the ASJ chapter No. 2060. See Ex. B, Terrazas Email, Sept. 5, 2017. She said the time capsule should not be disturbed without the planning and involvement of the ASJ chapter. Ms. Terrazas' Sept. 5 email was directed to Mayor Nirenberg; Bruce Davidson, the Mayor's Communication Director; and to Maria Cesar, Deputy Communications Director. No one ever replied to the chapter's email. Ms. Terrazas was concerned because the time capsule contained small items that could be lost or stolen. Ex. B, R. Terrazas 12/21/2017 Affid., p. 3.

Continued retention by the City of San Antonio of the contents of the time capsule will lead to further deterioration of its contents. The contents of the time capsule are fragile.

2. The due process violation occurs when the local government refuses to return the seized property.

When Plaintiffs filed its first Motion for Preliminary Injunction, the City argued that it owned the time capsule, if there was one, because it was placed inside the corner stone. Def's Response (Dkt #18), p. 6. The time capsule, if there was one, was a component of the monument itself. Def's Response (Dkt #18), p. 8. But, that begs the question. The issue is what does the City do now that it knows it seized property to which it had no lawful right?

In *Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001), the city seized $33,000 in cash, 18 firearms and 21 boxes of ammunition from the home of the plaintiff. The seizure was made as part of the execution of a search warrant pursuant to a narcotics investigation. No charges were ever filed against Mr. Lathon. Yet, the city refused to return any of the property, simply saying some of the firearms were assault weapons. The Eighth Circuit held that post-deprivation process does not matter when the governmental entity refuses to return property. There was no question the property was not needed for a prosecution or that any of the property constituted contraband. The violation of Sec. 1983 occurred when the city refused to return the seized property. *Lathon*, at 843-844. Like the plaintiff in *Lathon*, the ASJ chapter would have to file a separate lawsuit to recover its

time capsule. *Lathon*, at 844 (Finding it not an adequate remedy that the plaintiff would have to file four separate lawsuits to recover his property). The violation of Sec. 1983 did not occur when the time capsule was seized. The violation occurred when the City refused to return property to its rightful owner.

**Conference:** The Plaintiff left a telephone message for the Defendant. It turned out that that Defendant's counsel was out of the office on vacation. Via email, Defendant's counsel indicated he would respond when he returned to his office.

WHEREFORE, Plaintiff prays that a preliminary injunction be issued restraining and enjoining Defendant and their employees and agents from retaining any remaining contents of the time capsule within the foundation of the Travis Park monument in violation of the Plaintiff's Fifth and Fourteenth Amendment rights under the U.S. Constitution; that if the preliminary injunction is denied, that the Court order the Defendant to protect the contents of the time capsule pending final resolution of this lawsuit; and for all relief, at law and in equity, to which it may be entitled.

Respectfully submitted,

_____
Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
110 Broadway, Suite 420
San Antonio, Texas 78205
(210) 736-1110
(210) 745-4258 Fax
tom@cranelawyer.net

Attorney for Plaintiff

## Certificate of Service

I certify that a true copy of the foregoing instrument was electronically filed on the ___26th___ day of June, 2018 with the Clerk of Court using the CM/ECF system which will send notice of such filing to the following counsel:

Shawn Fitzpatrick
Fitzpatrick & Kosanovich
P.O. Box 831121
San Antonio, Texas 78283-1121

_____
Thomas J. Crane

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President | § § § § | CIVIL ACTION NO. SA-17-CV-1072-DAE |
| v. | § | |
| THE CITY OF SAN ANTONIO | § | |

ORDER
-----

On this came to be heard Plaintiff's Second Motion for Preliminary Injunction Regarding Time Capsule. Having heard argument of counsel and reviewed the motion and memorandum of law, it appears that the motion does have merit.

It is therefore:

ORDERED that Defendant release possession of any metal box or contents from the corner stone of the Travis Park statue to Plaintiffs. Defendant is ordered to release this property within ten days of the entry of this order. Defendant is further ORDERED to allow the Plaintiffs to observe first hand the removal of the time capsule or its contents from the corner stone of the former Travis Park monument.

**SIGNED AND ENTERED** this ___ day of _____, 2018.

_____
DAVIND A. EZRA
UNITED STATES DISTRICT JUDGE

10

1. At the Defendant's insistence, the Plaintiffs left the corner stone the way they found it, exposed to the air and UV light. The City has not acted in a responsible way regarding the historical artifacts. Indeed, the City denies the existence of the time capsule. Yet, the City clearly thought it existed. Otherwise, it would not have designated box no. 3 as the "Time Capsule" box. See Ex. A, Pictures of the time capsule box. The Defendant has not acted responsibly in regard to this litigation. In its Response filed on Dec. 29, 2017, it claimed several times that no time capsule was found. It accused the Plaintiffs of relying on "folklore" in claiming ownership of the time capsule. Def's Response, p. 8. Yet, it had a box marked "time capsule" in a hot, un-air conditioned warehouse.

    There were indications in the warehouse that the Travis Park monument has been exposed to water. Some cardboard had been wet and there was some dried, cracked dirt on top of one of the blocks of granite. Ex. F, R. Terrazas 6/18/2018 Affid., p. 1; Ex. D, R. Schimpff Affid., p. 3. If the contents of the time capsule were exposed to water, they will certainly suffer permanent damage. Ex. F, R. Terrazas 6/18/2018 Affid., p. 1.

    The time capsule was placed within the corner stone in 1899. According to Bobby Schltizberger, a certified memorialist, memorial builders of the time would typically chisel out a recess for a time capsule. Mr. Schlitzberger attended the inspection on June 6, 2018. In his opinion, that is what the builders of the Travis Park monument did. They chiseled out a recess in the corner stone. The builders then filled the recess or void with concrete and the metal box which included the historical artifacts. The metal box was encased in concrete for 118 years until the City of San Antonio removed the Travis Park monument. Someone apparently removed concrete from the top of the void and punctured the metal lid of the box. Ex. G. B. Schlitzberger Affid., p. 1.

    Plaintiffs are likely to succeed on the merits. The City was not authorized to seize or remove any historical artifacts. Ordinance No. 17-4900 applies to the statue and to the two cannon, but not to any metal box or historical artifacts. An injunction is in the public interest because a state or local government should not be allowed to seize property belonging to its citizens without due process. There has been no process by which the City had the right to seize or damage old papers, prayer books, a bible, buttons, pressed flowers, a flag and coins. There is no balancing required regarding the items in the corner stone, because the City has no right to those items.

6