IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President | § § § § § § | |
| v. | § § | 5:17-CV-1072-DAE |
| CITY OF SAN ANTONIO | § § | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' CORRECTED SECOND MOTION FOR PRELIMINARY INJUNCTION RE TIME CAPSULE**

TO THE HONORABLE DAVID A. EZRA:

Now comes the Defendant, the City of San Antonio, and makes this response to Plaintiff Albert Sidney Johnston Chapter 2060 (ASJ) second motion for preliminary injunction concerning the time capsule [**Doc.49**], and would show the following:

**Introduction**

1. This case is about a confederate monument that used to stand in Travis Park in San Antonio, Texas. **Doc.43**. The City removed the monument from Travis Park during the summer of 2017. ASJ concedes "[t]he City was authorized to remove the Travis Park monument" [**Doc.49 p.5**; Exhibit 4, Answer to Interrogatory 9], but contends the City was not authorized to withhold a time capsule that ASJ contends was incorporated within the base of the monument. Plaintiffs allege ASJ owns the monument and the time capsule, and Plaintiffs seek to recover just compensation for the loss of the monument and time capsule. **Doc.43 pp.3-4, 6-7**.

2. ASJ has now filed a second motion for preliminary injunction concerning the time capsulein the base of the confederate statue that the City removed from Travis Park. **Docs.49, 16**.

ASJ claims the redundant motion is warranted because ASJ had not seen the time capsule before filing its first motion and because the first motion was filed before ASJ consulted an expert in the field of preserving ancient records. **Doc.49 p.3**.

3.  ASJ wants injunctive relief that inverts the status quo. ASJ seeks a preliminary injunction restraining the City from "retaining any remaining contents of the time capsule . . . in violation of ASJ's Fifth, and Fourteenth Amendment rights," or, in the alternative, and an order compelling the City "to protect the contents of the time capsule pending resolution of this lawsuit."[1] **Doc.49, p.8**.

4.  In its second corrected motion for preliminary injunction, ASJ implies that it has established a high likelihood of success on the merits of its claims. **Doc.49 p.4**. ASJ argues that it is likely to suffer irreparable injury if the preliminary injunction is not granted, that the balance of interests tip in its favor, and that an injunction serves the public interest. **Doc.49 p.4**. ASJ argues that because the ordinance authorizing removal of the monument did not explicitly authorize removal of the time capsule, the City cannot continue to maintain possession of the time capsule. **Doc.49 p.6**. It contends the contents of the time capsule are in jeopardy because the City has not done anything to preserve them and because they have been exposed to heat, humidity, and water. **Doc.49 pp.5-6**. Finally, ASJ argues that its due process rights were violated *not* when the City removed the monument from Travis Park, but thereafter, when Plaintiffs requested the time capsule, but the City did not give it to them. **Doc.49 pp.6-7**.

---

[1]   As the Court is aware, the City is already subject to such a duty. See *Nirenberg I*, Doc.6, Cause No. 5:17-CV-837-DAE; **Doc.23 pp.12-13**.

**Preliminary Injunction Standard**

5.      The purpose of a preliminary injunction is to preserve the status quo by preventing irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 627 (5th Cir. 1985); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "The purpose of an injunction is to prevent *future violations*." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (emphasis added). Preliminary injunctions – like the one sought here – that would change, rather than maintain, the status quo, are generally disfavored and should not issue unless the facts and law clearly favor the moving party. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).

6.      A preliminary injunction is a "drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (citation omitted) (emphasis in original); *PCI Transportation, Inc. v. Fort Worth & Western Railroad Company*, 418 F.3d 535, 546 (5th Cir. 2005) ("The plaintiff has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction."). As a result, "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light*, 760 F.2d at 621; *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir.1996).

7.      To obtain a preliminary injunction, it is well established that a movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction will not disserve the public interest.

*Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015); *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997); *Mississippi Power & Light*, 760 F.2d at 621 (*citing Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)). A preliminary injunction must be denied where the movant has failed sufficiently to establish *any one* of these four criteria. *Black Fire Fighters Ass'n v. City of Dall.*, 905 F.2d 63, 65 (5th Cir. 1990) (emphasis in original). Only if a movant demonstrates a likelihood of success on the merits must the Court analyze the threat of irreparable harm or weigh the relative hardships. *See State of Tex. v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).

**Analysis**

8. ASJ's second motion for preliminary injunction should be denied. The motion seeks to reverse the status quo rather than maintain it. ASJ fails to meet its burden to show that any of the applicable criteria warrant the extraordinary relief it seeks.

*What is the likelihood ASJ will ultimately prevail on the merits?*

9. Success on the merits is the predominant criterion. *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005). The cogent claims are ASJ's Fifth Amendment takings claim and its Fourteenth Amendment procedural due process claim. **Doc.49 p.8**. ASJ has made no clear showing that it stands a substantial likelihood that it will prevail on the merits of either of those claims.

10. ASJ alleges that it owns the monument and the time capsule, but its second motion for preliminary injunction offers no evidence to support this element of its Fifth and Fourteenth Amendment claims. *See Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012) (State-law property interest is prerequisite to Fifth and Fourteenth Amendment claims); **Doc.49; Doc.49-3 p.7** (Illustration of the monument labeled, "*San Antonio's* First Public

Monument") (emphasis added). Without an ownership interest in the monument and time capsule, ASJ has no property interest triggering procedural due process protections, and it had no property interest susceptible to taking by the City. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994). ASJ is unlikely to succeed on the merits of its Fifth and Fourteenth Amendment claims for the reasons set forth in the City's motion to dismiss them [**Doc.44 pp.6-14**], which the City adopts and incorporates herein as if set forth verbatim. ASJ's Fifth Amendment claims are not ripe and, because its Fourteenth Amendment and Fifth Amendment claims are closely related, the Fourteenth Amendment procedural due process claim is also unripe. *See discussion at* **Doc.44 pp.12-13;** *see e.g. Rosedale Missionary Bapt. Church v. New Orleans City*, 641 F.3d 86, 90 (5th Cir. 2011).

11.  The evidence[2] does not establish that the *contents* of the time capsule belong to ASJ, either. At least two different persons are reported to have dropped things into the time capsule. *See* **Doc.49-3**. Neither of them were the Plaintiffs or any of their predecessors. *See also,* **Doc.16-2, pp.8-9** (items in the box were placed there by the Alamo Masonic Lodge, not the Plaintiffs). Moreover, no person who deposits items in a structure that was meant to stand for the ages – or in any time capsule likely to be opened after the depositor's death – could reasonably expect to assert a continued ownership interest in the deposited property: when items are placed in a time capsule, they have been abandoned to the future. The Plaintiffs offer no allegation or proof that ASJ's predecessor in interest ever asserted an ownership interest in the contents of the time capsule or gave the contents to the ASJ. Indeed, any evidence ASJ offers that its alleged predecessor gave anything to ASJ (beyond the deeds to two cemetery properties) is the

---

[2]   ASJ's evidence is addressed herein notwithstanding the City's objections, filed separately.

conclusory (or hearsay-based) *ipse dixit* of the Plaintiffs. *See* **Doc.49-1 p.6** ("I do not know what happened to the Bernard E. Bee minutes at that time.").

12.     ASJ argues the City had no right to remove the time capsule because the ordinance directing the monument's removal did not explicitly authorize removal of a time capsule. However, the time capsule was cast into the monument. **Doc.49-4 p.10; Doc.16-2, pp.8**. It was an inseparable part of the monument, and ASJ's evidence establishes that it still is. *See* **Doc.49-3 p.7**. It would have been impossible to remove the monument from Travis Park without also removing the time capsule. *See* **Doc.49-4 p.10; Doc.16-2, p.8**. ASJ's argument could – without stretching – accommodate a contention that the ordinance [*see* **Doc.49-2**] authorized only removal of the monument (i.e., the base) and not the statue on top of it because the ordinance does not explicitly identify the statue. But that's absurd. It is implausible to conclude that an ordinance providing for the removal of a monument reflected an intent not to also remove items that were components of the monument.[3]

13.     ASJ advances a novel procedural due process theory in its second motion for preliminary injunction. Relying on an opinion from the Eighth Circuit, it contends that its procedural due process rights were violated *not* when the City voted to remove the monument, but instead when the City failed to surrender the contents of the time capsule after the monument had been removed. In *Lathon v. City of St. Louis,* 242 F.3d 841 (8th Cir. 2001), items seized pursuant to criminal arrest were not returned to the arrestee after there had been a determination that the

---

[3]     Ironically, if ASJ were to prevail on its argument that removing the time capsule was the unauthorized act of a City official, then it would establish that Plaintiffs' due process claim is unripe even under Plaintiffs' erroneous application of constitutional ripeness principles. Plaintiffs rely on *Parratt v. Taylor* to argue, erroneously, that exhaustion is not required in this case and is only required when a deprivation results from the *un*authorized act of a governmental official.

items were not contraband nor were they needed as evidence. The arrestee sued. The trial court granted the defendants' motion for summary judgment, which, citing *Parratt*, argued that the failure to return the seized items was the result of an unauthorized act of an official and therefore the plaintiff was required to exhaust remedies in state court. The Eighth Circuit rejected the argument, determining that the withholding had been authorized, and therefore *Parrat* did not apply. *Id.*

14.     There are a number of problems with Plaintiff's argument. First, Plaintiffs have not pleaded this theory. Second, *Lathon* deals with post-deprivation remedies, whereas in this case Plaintiffs had – and availed themselves of – ample *pre*-deprivation process. Exhibits 4, 5 (Answers to Interrogatories 5, 6). Plaintiffs had the opportunity to address City Council about the time capsule in advance of removal, but, inexplicably, they opted not to. See e.g. Exhibit 4 ("The time capsule was not something I felt I should discuss in a public forum. … It was public, so I could not discuss the time capsule."). *Lathon* does not even address the Fifth Amendment. Third, the opinion is not faithful to this Circuit's controlling authority applying *Williamson County*, which unequivocally requires exhaustion of state remedies before a takings claim or a procedural due process claim related to a takings claim is ripe for adjudication in federal court. *See* **Doc.44 paras.25-27**. Fourth, in *Lathon*, there had been a determination that there was no continuing reason not to return the seized items, whereas there has been no such determination in this case. Fifth, there is no suggestion that the Plaintiffs in this case will have to pursue their state law remedies in multiple forums, a factor that seemed important to the panel that decided *Lathon* (although its holding was not premised on that contingency). Finally, this case differs from *Lathon* because it has nothing to do with criminally-seized property. Therefore, *Lathon* isnot

instructive in this case, which falls within the Fifth Circuit's authorities applying *Williamson County*. ASJ's claim is unripe until it exhausts its state court remedies.

### *Will granting the injunction disserve the public interest?*

15. The public interest clearly favors the City's continued retention of the monument, its components and contents. The City is a public entity. Plaintiffs are a private entity and private persons. The property remains in the public's possession as long as the City continues to hold it. If the Court delivers custody or possession to ASJ, the property will be held privately, which is contrary to the public interest in the matter before the Court. Transferring possession to private hands in reliance on ASJ's ownership evidence – folklore, inference, and other hearsay – should be especially troubling from the public interest perspective.

### *What is the threat ASJ will suffer irreparable injury?*

16. Unlike the initial motion for preliminary injunction, ASJ's second motion for preliminary injunction seeks to show *some* possibility that injury might occur to the contents of the time capsule. Of course, any injury to the time capsule contents would be suffered by the City, since the City owns the monument and whatever was in it. Notwithstanding the City's evidentiary objections, ASJ's evidence does not demonstrate a significant risk of harm.

17. ASJ fears that the contents of the time capsule might be damaged if exposed to moisture and high temperatures. The combined affidavits of two persons who inspected the monument on June 6, 2018, state that the "closed metal building" in which the monument is stored was hot on that day, that most of the monument components were covered in plastic and surrounded by wooden sides, that two pieces of cardboard in the room showed signs of having been wet, and

that some of the granite or concrete appeared to have been wet at some prior point in time, but *not* the piece with the hole in it where the time capsule is said to be.[4] **Docs.49-3 p.4, 49-4 p.6**.

18.  The City's evidence shows that the monument was infested with insects and had been thoroughly permeated by water at the time it was removed from Travis Park. The hole where Plaintiffs contend they located remnants of the time capsule was filled with water. Exhibit 1. ASJ's evidence confirms that the monument was never properly sealed against water intrusion. **Doc.49-4 p.10**. ASJ's evidence shows that although the void is no longer filled with water, its contents are in very poor condition. See **Doc.49-3 p.8**. The photos produced by the Plaintiffs following their inspection show the same. Exhibit 2.

19.  ASJ's evidence of threatened harm is based on speculation and conjecture. ASJ's evidence concerning the cleanliness of the monuments (or the Plaintiffs' suspicion that water had been present on them) are pure conjecture as they relate to conditions in the warehouse. It is equally likely that dirt or signs of water are the remnants of the monument standing outside in the weather for 117 years, since the evidence establishes that the monument wasn't properly sealed and its pieces were wet when disassembled. Exhibit 1; *See* **Doc.49-4 p.10**. But even if water entered the current storage building (of which there is no evidence), the monument components inside the building were crated and covered in black plastic. **Doc.49-3 p.5**. And ASJ's evidence confirms that the piece of the base containing the time capsule had no signs of water whatsoever, even though it was not covered by a crate or by plastic when the Plaintiffs inspected it. **Doc.49-4 p.6**.

---

[4]   Photos taken at the inspection and produced to the City by the Plaintiffs do not easily correlate with the written description in ASJ's evidence. See Exhibits 3a-3d.

20. The affidavit of Rachel Mauldin should be stricken as the affidavit of an undisclosed expert. **Doc.49-4 pp.2-3**. Nonetheless, her affidavit fails to address the current condition of the time capsule's contents. She is concerned that heat and humidity might lead to deterioration, "brittleness, discoloration, and foxing" of the materials in the time capsule. Her affidavit (based entirely on hearsay descriptions by persons interested in the outcome of the case) makes no indication that she is aware of the present condition of the time capsule contents. She does not indicate she has seen the pictures of the contents, like the ones attached to the motion and this response. She is apparently unaware that the time capsule sat in an improperly-sealed monument for over a hundred years in exactly the kind of heat and humidity (not to mention cold, dry, and every other weather phenomenon Texas has to offer) that she fears may hurt its contents. She says nothing of whether the contents of the time capsule are even salvageable, or whether, in their present condition, they will suffer further, irreparable harm in the warehouse.

21. There is no substantial threat of irreparable injury should the City retain the time capsule. The City has exercised dominion and control over the monument, which incorporated the time capsule, for more than a century. ASJ is left to only speculate that continued retention by the City at this time would be detrimental to the property inside the time capsule. The City has covered, wrapped, and/or crated the components of the monument and placed them in a dry place secure against the elements and the threat of tampering and vandalism (of which ASJ presented no evidence), as it advised this Court during a hearing in a related matter in August 2017. ASJ wholly ignores the likelihood that damage would have progressed unabated had the monument and the time capsule within it remained exposed to the elements *in situ*.

22. Plaintiffs do not suggest that irreparable damage hadn't already been inflicted by the elements long before the monument was removed from Travis Park. The description of the void

suggests it had and that the damage was complete. Exhibit 1, Exhibit 2, **Doc.49-3 p.8**. But more importantly, there is no threat that its current storage condition will do further, permanent damage.

23.   ASJ's burden is greater here because it seeks to upend the status quo rather than maintain it. *See Martinez*, 544 F.2d at 1243. But ASJ has failed to establish a significant risk of harm or that disturbing the status quo (i.e., the monument's current storage conditions) would prevent future harm, the presence and imminence of which exist only as matters of pure speculation.

> *Does the threatened injury to ASJ outweigh whatever damage the proposed injunction may cause the City?*

24.   The balance of the hardships is ordinarily the least important of the criteria, and this case is no different. Nonetheless, this criteria also favors denial of ASJ's corrected second motion for preliminary injunction. ASJ does not own the time capsule or its contents. The City's ownership claim is superior to ASJ's. As set forth above, the ASJ (and its alleged predecessors) and the City are in the same posture vis-à-vis possession of the time capsule that they have been in since 1899. The monument has been in the City's uninterrupted possession for over a century. The City would incur substantial expense should the Court require it to transfer possession to ASJ; note that the cost of removing the monument exceeded the initial, sizeable monetary allocation. *See* **Doc.16-2, p.3**.

## Security

25.   ASJ's corrected second motion for preliminary injunction should be denied because it fails to pledge security. Fed. R. Civ. P. 65(c).

## Prayer

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs' corrected second motion for preliminary injunction be denied.

Respectfully submitted,

_____
Shawn Fitzpatrick
SBN 00787474
FITZPATRICK & KOSANOVICH, P.C.
PO Box 831121
San Antonio, Texas  78283-1121
(210) 408-6793
skf@fitzkoslaw.com

## CERTIFICATE OF SERVICE

I certify service of a true and correct copy of this instrument on the following person on July 3, 2018, through the Court's electronic filing and notification system:

Thomas J. Crane

_____
Shawn Fitzpatrick

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALBERT SIDNEY JOHNSTON Chapter No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, President, JEAN CAROL LANE, First Vice-President | § § § § § § | |
| v. | § § | 5:17-CV-1072-DAE |
| CITY OF SAN ANTONIO | § § | |

**Order Denying Plaintiffs' Corrected Second Motion for Preliminary Injunction**

Came on to be heard Plaintiffs' motion for preliminary injunction [**Doc.49**] and Defendants' response to same [**Doc.\_\_**], and the Court finds the Plaintiffs have failed to carry their burden and denies their motion.

It is, therefore, ORDERED, that Plaintiffs' motion for preliminary injunction [**Doc.49**] is hereby DENIED.

Signed on this the \_\_\_ day of _____, 2018.

_____
UNITED STATES DISTRICT JUDGE