UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALBERT SIDNEY JOHNSTON Chapter § No. 2060, United Daughters of the Confederacy, ROBIN TERRAZAS, § President, JEAN CAROL LANE, First Vice-President § | CIVIL ACTION NO. SA-17-CV-1072-DAE |
| v. § | |
| THE CITY OF SAN ANTONIO § | |

PLAINTIFFS' REPLY REGARDING MOTION FOR PRELIMINARY
INJUNCTION RE TIME CAPSULE

Plaintiff, Albert Sidney Johnston Chapter No. 2060, submits this, its Reply Regarding its Second Motion for Preliminary Injunction Regarding the Time Capsule (Dkt #49) pursuant to Fed.R.Civ.Pro. Rule 65, and shows as follows:

**Procedural Background**

The Plaintiffs submitted their Corrected Second Motion for Preliminary Injunction (Dkt # 49) on June 26, 2018. The Defendant then submitted its Response (Dkt #52) on July 3 and its Objections (Dkt #53) on July 3, 2018.

1. The City has mis-stated Plaintiff's discovery response.

In the first paragraph of the City's Response (Dkt #52), the City claims the ASJ chapter conceded that the city was "authorized" to remove the Travis Park Confederate Memorial. The City cites the Plaintiff's answer to Ex. 4, Response to Interrogatory No. 9 for this assertion. This assertion is incorrect. The complete response to Interrogatory No. 9 is as follows:

> "Plaintiff objects to the premise of the interrogatory, that the Travis Park monument is comparable to a "display" in a city park. Plaintiff further objects that the word "curatorial" is not defined. Without waiving these objections, Plaintiff does not disagree that in general the City government may have the responsibility and right to determine what goes in city parks on land controlled or owned by the city. Plaintiff is not an expert regarding government functions and she is not a lawyer."

Def's Ex. 4, Response to Interrogatory No. 9. This response was provided by Robin Terrazas, the President of the ASJ chapter. Nothing in this response suggests the ASJ chapter agreed the City was "authorized" to remove the Travis Park monument. If asked, the chapter would have agreed that the City did pass an ostensibly lawful ordinance to remove the monument. But, the chapter would not at all agree it was "authorized" to remove the memorial. The City has mis-stated Plaintiff's response.

2. The City did not contact the City Archaeologist or the City Historic Preservation office when it uncovered the time capsule.

The Defendant advances several reasons for opposing the return of the time capsule to the Plaintiffs. But, it never addresses Plaintiff's other request for relief. Plaintiff's secondary request for relief was that if the Court does not order the return of the time capsule to the ASJ chapter, then the Plaintiffs ask the Court to order the City to take appropriate care of the time capsule pending the outcome of the lawsuit. Defendant does not disagree with or oppose that request. The Defendant should at least be ordered to safeguard the contents of the time capsule.

Remarkably, the Defendant does not dispute that it mis-led the Court. The Defendant presented an affidavit by Jim Mery, the Deputy Director for the City Center Development Office. He testifies in his Declaration that the work crew found a "hole" during the removal process. He said there was water in the hole. Def's Response, Ex. 1. He said insects were "everywhere" without specifying exactly where. What is missing from his statement is any indication that he or anyone among the removal crew contacted the City Archaeologist, Kay Hindes or the City Historic Preservation Office. The Unified Development Code Sec. 35-632(b) requires that unidentified archaeological sites be reviewed by the Historic Preservation Office and that an archaeologist conduct a study. In ascertaining the historic value of a site, the City requires persons to apply the criteria used by the state of Texas in the state Antiquities Code. UDC Sec. 35-633((a)(1). The state Antiquities Code is found at Tex.Nat.Res.C. Sec. 191.001, *et seq*. Tex.Nat.Res.C. Sec. 191.092 then finds that items with historical value would include items which are associated with significant events in the history of Texas or of the United States. Whether the time capsule falls within these criteria or not, it is remarkable that the Deputy Director for the City Center Development Office did not contact the City's own Archaeologist for

2

an opinion. Even more remarkable is that ten months after the removal of the memorial, the City still has taken no steps to protect these artifacts. The Defendant still today has an archaeologist and a Historic Preservation officer on staff. At little or no expense, the Defendant could send one or both of those persons to inspect the time capsule.

This failure to comply with its own ordinances is amplified by Defendant's mis-representation that nothing was found. In response to the Plaintiffs' first Motion for Preliminary Injunction in December, 2017, the Defendant said no time capsule had been recovered during the removal process. See Def's Response (Dkt #18), p. 6, 7, 8, 10 n.4. The Defendant said ". . . . [N]othing had been located which might have been a time capsule other than a void in the base of the statue. . ." Def's Response (Dkt #18), p. 10 n.4. The Defendant referred to some property which Plaintiffs "contend" is a time capsule. Def's Response (Dkt #18), p. 6. The Defendant asserted the time capsule simply did not exist. In one footnote, the City said it would "use the term [time capsule] as a matter of convenience, but deny that anything resembling the Plaintiffs' description of a time capsule was located in the monument when it was removed." Def's Response (Dkt #18), p. 2 n.1. The Defendant said nothing even "resembling" a time capsule was found. It never disclosed in its Dec. 29 Response that a hole was found which could have been an opening into the time capsule.

Now we know the Defendant was aware of the existence of the time capsule since the removal. It designated box no. 3 for the "Time Capsule." That designation would have been made during the removal process in September, 2017. The Defendant has not been forthcoming about the time capsule.

3. The Plaintiffs did timely disclose Rachel Mauldin as an expert.

The City mis-states the testimony of Rachel Mauldin. The Defendant says she makes no indication in her statement that she is aware of the present condition of the time capsule contents. Def's Response, p. 10. In actuality, she states in the first substantive paragraph of her affidavit that what she knows, she knows from the affidavits of Rita Schimpff and Robin Terrazas. See Def's 2d Mtn Prelim. Inj. Ex. E, R. Mauldin Affid., p.1. Both Ms. Schimpff and Ms. Terrazas inspected the monument on June 6, 2018. It would be accurate to say that Ms. Mauldin bases her opinion on the reported conditions

3

and not on her own observation. Her understanding is based on the observations of Ms. Schimpff and Ms. Terrazas.

It is not accurate to state that Ms. Mauldin has not been disclosed as an expert. She was disclosed on June 21, 2018. See Ex. A, Plaintiffs' Third Amended Disclosures, p. 7. Her report is her affidavit. Her testimony serves no purpose other than the time capsule. The inspection did not occur until June 6. The Defendant imposed several conditions for the inspection, which were not provided for in Fed.R.Civ.Pro. Rule 34. It took some time to discuss the conditions and schedule the inspection. Ms. Mauldin could not possibly prepare a report or statement until someone had viewed the Travis Park memorial. This was the same inspection which *almost* did not occur on June 6, because the Defendant refused to explain to Plaintiff how the boxes were sealed and explain what tools would be necessary for the inspection.

Instead of addressing the present condition of the historical artifacts, the Defendant seeks to assign blame for the likely damage to the contents. It discusses whether they might have suffered damage before the removal on Aug. 31, 2017. See Def's Response, p. 10. That would be an appropriate issue for trial. But, this is a motion for preliminary injunction. The proper concern would be how to safe guard these artifacts, *today*. And, that is the focus of Ms. Mauldin's affidavit. Her focus does not involve blame. It involves protecting these artifacts.

Regarding the present condition, the City makes the remarkable claim that the apparent water infiltration could have occurred over the past 118 years. Def's Response, p. 9. But, that would not account for card board which has suffered visible water damage. The card board was used as packing material and still remains today in the pallets at the warehouse. The card board was not part of the Travis Park memorial until Aug. 31, 2017. If there is water damage to the card board, as Ms. Terrazas mentioned, that water must have been applied after Aug. 31, 2017.

The Defendant could have presented its own expert to explain why the contents of the time capsule are not at risk. It is telling that the Defendant did not present a statement from its archaeologist or Historic Preservation officer disputing Ms. Mauldin's testimony.

Instead, The Defendant focuses on minimizing Plaintiff's concerns or attempting to assign blame. The focus should be on prevention of further deterioration. The

4

Defendant claims the Plaintiffs simply showed "*some* possibility" (emphasis the Defendant's) of damage. But, that was not Ms. Mauldin's testimony. She said in her affidavit that "[d]eterioration is certain if nothing is done." Pl's 2d Mtn Prelim. Inj., Ex. E, R. Mauldin Affid., p. 2.

This is a motion for preliminary injunction. At the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence. *Sierra Club Lone Star Chapter v. Federal Deposit Insurance Corp.*, 992 F.2d 545, 551 (5th Cir. 1993); *see, also, Millennium Restaurants Group v. City of Dallas*, 181 F.Supp.2d 659, 661 n.3 (N.D. Tex. 2001) (Objections based on hearsay, inappropriate expert opinion, and speculation are denied, because a preliminary injunction proceeding is not subject to trial procedures; and the court did not rely on that evidence); *Texas Medical Providers v. Lakey*, 806 F.Supp.2d 942, 956 (W.D. Tex. 2011) (At the preliminary injunction stage, the procedures in the district court are less formal, and the district court may rely on otherwise inadmissible evidence, including hearsay evidence).

4. The Defendant has asserted facts which are not supported by its evidence.

The Defendant argues in its Response that the hole in the corner stone was "thoroughly permeated" with water when it was removed after Aug. 31, 2017. The hole was "filled" with water. Def's Response, p. 9. The Defendant cites Ex. 1, the affidavit of Jim Mery. But, Mr. Mery's testimony simply states that there was water in the hole. Def's Ex. 1. The Deputy Director for the City Center Development Office nowhere states the hole was "filled" with water or "permeated" with water. He never indicates how much water was in the hole.

There were several workers removing the memorial. Yet, the Defendant sought testimony from just one person who was present. The Defendant speculates about other possible ways water could have ended up on the monument while inside a warehouse. It seeks to defend itself from blame for the present condition of the time capsule. See Def's Response, p. 9, 10. But, such speculation begs the question. The point is the contents of the time capsule exist and are present at that warehouse in the custody of the City of San

Antonio. If nothing is done, the contents will suffer damage before this lawsuit is concluded.

      WHEREFORE, Plaintiff prays that a preliminary injunction be issued restraining and enjoining Defendant and their employees and agents from retaining any remaining contents of the time capsule within the foundation of the Travis Park monument in violation of the Plaintiff's Fifth and Fourteenth Amendment rights under the U.S. Constitution; that if the preliminary injunction is denied, that the Court order the Defendant to protect the contents of the time capsule pending final resolution of this lawsuit; and for all relief, at law and in equity, to which it may be entitled.

                                              Respectfully submitted,

_____
Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
110 Broadway, Suite 420
San Antonio, Texas 78205
(210) 736-1110
(210) 745-4258 Fax
tom@cranelawyer.net

Attorney for Plaintiff

Certificate of Service

    I certify that a true copy of the foregoing instrument was electronically filed on the ___9th___ day of July, 2018 with the Clerk of Court using the CM/ECF system which will send notice of such filing to the following counsel:

Shawn Fitzpatrick
Fitzpatrick & Kosanovich
P.O. Box 831121
San Antonio, Texas 78283-1121

_____
Thomas J. Crane

7